IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

SANJEEV SIRPAL,             *

    Plaintiff,          *

        v.                 *      CIVIL NO.: WDQ-12-0365

FENGRONG WANG,              *

    Defendant.          *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Sanjeev Sirpal, a former Johns Hopkins University graduate student, filed a *pro se* complaint in the Circuit Court for Baltimore City alleging defamation and other common law claims against fellow graduate student Fengrong Wang. ECF No. 2. Wang removed the suit to this Court. For the following reasons, Wang's motion to dismiss counts 3 and 4 will be granted. Sirpal's motion to quash and for a protective order will be granted.

I.   Background[1]

Sirpal and Wang were doctoral students in the Johns Hopkins School of Public Health, studying in the Department of Biochemistry and Molecular Biology. ECF No. 6 ¶¶6-7. Beginning on October 28, 2011, Wang sent Sirpal romantic letters, text messages, and e-mails, indicating Wang's belief that she was in

---

[1] For the motion to dismiss, the well-pled allegations in the amended complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).

love with and would marry Sirpal. *Id.* ¶¶12-17. Sirpal made no written response to the messages, but he orally rejected Wang's advances. ¶¶18-19.

On November 18, 2011, Wang sent Sirpal an email stating that she was "tired because of this relationship" and would "not forgive [her]self if [she did not] end it." *Id.* ¶17. She also told Sirpal that she would "destroy" him by "get[ting him] kicked out of" their doctoral program. *Id.* ¶27. Later that day, Sirpal gave Wang a handwritten note saying that he was not interested in a romantic relationship and was uncomfortable with her advances. *Id.* ¶28.

On November 21, 2011, the Chair of the Department of Biochemistry and Molecular Biology, Dr. Pierre Coulombe, asked Sirpal to meet with him and Mike Ward, Associate Dean for Student Affairs at the School of Public Health, because "[a]n issue [had] ar[isen]." *Id.* ¶32. A guard also attended the meeting. *Id.* ¶35. Sirpal learned that Wang had told Coulombe that Sirpal had threatened to report Wang to Coulombe for spending insufficient time in her lab, physically threatened and stalked her, and tried to get academic favors in exchange for spending time with her. *Id.* ¶33. Wang had told Coulombe that she would kill herself out of fear for Sirpal. *Id.* ¶34.

Sirpal denied the accusations, but Coulombe, Ward, and the guard did not believe that Wang, who was "small and innocent,"

could have instigated the problem. *Id.* ¶37. Ward instructed Sirpal to have no contact with Wang while Ward investigated the matter. *Id.* ¶¶38-39.

On November 22, 2011, Sharon Warner, an Academic Programs Administrator, met with Sirpal and told him that Wang had told her that Wang and Sirpal had been in a two month abusive relationship, one day they would get married and have children, and Wang would commit suicide if Sirpal did not marry her. *Id.* ¶41. Sirpal again denied the accusations. *Id.* ¶42.

Because of Wang's statements to Ward, Coulombe, the guard, and Warner, Sirpal has "suffered extreme emotional distress, physical harm, mental anguish, loss of appetite, loss of sleep, and loss of enjoyment of life." *Id.* ¶44.

On December 5, 2011, Sirpal filed a complaint against Wang in the Circuit Court for Baltimore City. ECF No. 2. On January 14, 2012, Sirpal filed an amended complaint, seeking $100,000 in compensatory damages and $300,000 in punitive damages.[2] ECF No. 6 at 14. The amended complaint alleged: defamation *per se* (count 1), defamation (count 2), tortious interference with business relations (count 3), and intentional infliction of emotional distress (count 4). *Id.* ¶¶46-77.

---

[2] Under Md. Rule 2-341(a), a party may amend his pleading without leave of the court up to 30 days before the scheduled trial date if no scheduling order has been entered in the case.

On January 11, 2012, Wang served Sirpal's cell phone carrier with a Circuit Court for Baltimore City subpoena *duces tecum* seeking all call and text records from August 1, 2011 to December 15, 2011, for Sirpal's phone numbers ending in 7571 and 5849 ("the state subpoena"). ECF No. 9 Attach. 4.  On February 6, 2012, Wang removed to this Court under diversity jurisdiction.[3]  ECF No. 1.  On February 14, 2012, Wang noted that Verizon had given Wang[4] the records for the 5849 phone. ECF No. 18 at 3 n.3.[5]  The same day, Wang served on Verizon a federal subpoena for records for the 7571 phone ("the federal subpoena"); Verizon's agent had told Wang that Verizon would not preserve cellular telephone records unless subpoenaed.  ECF No. 24 at 2.  Wang asked Verizon not to respond to the federal subpoena until Wang indicated that discovery had begun.  *Id.*

On February 13, 2012, Wang answered counts 1 and 2 of the amended complaint and moved to dismiss counts 3 and 4 for failure to state a claim.  ECF Nos. 13, 16.  On March 2, 2012, Sirpal opposed the motion to dismiss and moved to quash the

---

[3] Sirpal is a citizen of Florida.  ECF No. 2 at 1.  Wang is a Chinese citizen studying in Maryland under a student visa.  ECF No. 1-1.

[4] Wang states that Verizon sent the records to the Circuit Court for Baltimore City, which sent them to defense counsel, who provided a copy to Sirpal.  ECF No. 18 at 3 n.3.

[5] On February 16, 2012, the Court quashed the state subpoena to the extent it had not been executed, because Wang had issued it prematurely.  ECF No. 19.

federal subpoena or for a protective order.  ECF Nos. 21, 22. Wang opposed the motion to quash.  ECF No. 24.

II.  Analysis

   A.  Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced.  *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003).  These facts must be sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires the plaintiff to do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

    B.    Wang's Motion to Dismiss Counts 3 and 4

        1.    Count 3: Tortious Interference with Business Relations

Count 3 alleges that Wang falsely accused Sirpal of physical and emotional abuse and misconduct, with the intent to harm Sirpal's relationship with the university, and as a result "Sirpal suffered damages and loss." ECF No. 6 ¶¶62-69.

Wang contends that Sirpal has failed to state a claim for tortious interference with business relations ("tortious interference") because his damages allegations are conclusionary, and he has not alleged that he had a contract with the School of Public Health. ECF No. 13-1 at 6-7. Sirpal responds that he has satisfied Rule 8's liberal pleading requirements. ECF No. 21 at 5-7.

In Maryland, tortious interference encompasses two causes of action: "inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with

economic relationships in the absence of a breach of contract." *K&K Mgmt., Inc. v. Lee*, 316 Md. 137, 154-55, 557 A.2d 965, 973 (1989) (internal quotation marks and citations omitted). Sirpal believes he has pled both causes of action. ECF No. 21 at 6-7.

To state a claim for interfering with economic relations, a plaintiff must show:

> (1) Intentional and wil[l]ful acts; (2) calculated to cause damage to the plaintiff[] in [his] lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendant[] (which constitutes malice); and (4) actual damage and loss resulting.

*K&K*, 316 Md. at 155, 557 A.2d at 973. To state a claim for inducing breach of contract, the complaint must show that

> (1) a contract or legally protected interest existed between the plaintiff and a third party; (2) the defendant knew of the contract; (3) the defendant intentionally induced the third party to breach or otherwise rendered performance of the contract impossible; (4) the interference was wrongful or without justification; (5) the contract was subsequently breached or terminated by the third party; and (6) the plaintiff suffered damages as a result.

*Prudential Real Estate Affs., Inc. v. Long & Foster Real Estate, Inc.*, 208 F.3d 210 (table), 2000 WL 248180, *3 (4th Cir. 2000).[6]

---

[6] *See also Macklin v. Robert Logan Assocs.*, 334 Md. 287, 297 n.7, 639 A.2d 112, 117 (1994) ("One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.").

For each type of tortious interference, the plaintiff must show that the defendant's act caused either "the destruction of the business relationship which was the target of the interference,"[7] or a breach of the contract by the third party.[8]

The amended complaint does not show that Wang's acts destroyed Sirpal's relationship or contract with Hopkins.[9] It does not allege that Hopkins expelled Sirpal or Wang's acts made it impossible for him to continue his studies, only that several school officials developed "a tainted opinion of Sirpal," harming his reputation. ECF No. 6 ¶¶44, 54, 56. Accordingly, count 3 must be dismissed.

Sirpal may file an amended complaint alleging--as he noted in his opposition to the motion to dismiss--that Wang caused Hopkins to issue a trespass order banning him from the campus and effectively preventing him from completing his doctoral studies. *See* ECF No. 21 at 7.

---

[7] *Kaser v. Fin. Protection Mktg.*, 376 Md. 621, 629, 831 A.2d 49, 54 (2003).

[8] *Prudential Real Estate*, 2000 WL 248180, *3.

[9] By alleging that he was a student at Hopkins at the time of the incident, Sirpal showed that he had a contract with the school. *See Harwood v. Johns Hopkins Univ.*, 747 A.2d 205, 209 (Md. Ct. Spec. App. 2000) ("When a student is duly admitted by a private university there is an implied contract between the student and the university that, if the student complies with the terms prescribed by the university, the student will obtain a degree." (internal quotation marks and citation omitted)).

Such an allegation may also satisfy the actual damages pleading requirement. *See K&K*, 316 Md. at 155, 557 A.2d at 973. That certain Hopkins faculty and staff developed a negative opinion of Sirpal because of Wang's conduct, without more, does not show actual damages. *Tribalco, LLC v. Hue Tech., Inc.*, No. 11-0965-JFM, 2011 WL 3821074 (D. Md. Aug. 26, 2011). However, if Wang caused Hopkins to breach the contract or end its relationship with Sirpal, that breach or lost ability to complete the program may constitute actual damages. *Cf. id.; Harwood v. Johns Hopkins Univ.*, 747 A.2d 205, 209 (Md. Ct. Spec. App. 2000).

2. Count 4: Intentional Infliction of Emotional Distress

Count 4 alleges that Wang's false accusations were extreme and caused Sirpal "severe emotional distress as to require Sirpal to experience physical manifestations of the emotional injuries" and "injury to his reputation . . . creating professional-economic injury." ECF No. 6 ¶¶71-77.

Wang contends that her alleged conduct and Sirpal's suffering do not rise to the level of intentional infliction of emotional distress ("IIED"). ECF No. 25 at 4. Sirpal counters that his allegations that Wang accused him of a crime, and he experienced "physical harm, mental anguish, loss of appetite,

loss of sleep and loss of enjoyment of life," state a claim for IIED. ECF No. 21 at 9-10.

To state a claim for IIED, the complaint must show that the defendant intentionally or recklessly engaged in conduct that was extreme and outrageous, and the wrongful conduct caused the plaintiff severe emotional distress. *Batson v. Shiflett*, 325 Md. 684, 733, 602 A.2d 1191, 1216 (1992). The conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 734, 602 A.2d at 1216.[10] Defamatory conduct "in no way satisfies [the] exacting standard for extreme and outrageous conduct." *Id.* at 735, 602 A.2d at 1217. "[S]trategically designed [speech] . . . intended and calculated to harass" the plaintiff by accusing him of crimes is not extreme and outrageous. *See id.* at 734, 602 A.2d at 1217.[11]

---

[10] For example, a doctor knowingly exposing a nurse to an incurable sexually transmitted disease without warning her, a psychologist treating a patient for marital problems having sex with the client's wife, an insurer forcing a claimant to undergo a psychiatric examination for the sole purpose of harassing her and forcing her to abandon her claim or commit suicide. *Batson*, 325 Md. at 734, 602 A.2d at 1216 (*citing Figueiredo-Torres v. Nickel*, 321 Md. 642, 584 A.2d 69 (1991); *B.N. v. K.K.*, 312 Md. 135, 538 A.2d 1175 (1988); *Young v. Hartford Accident & Indemnity*, 303 Md. 182, 492 A.2d 1270 (1985)).

[11] In *Batson*, Shiflett, former president of Local 33, an affiliate of the Industrial Union of Marine and Shipbuilding Workers of America, sued the national union and Batson, its president, for defamation and IIED. *Batson*, 325 Md. at 692, 602 A.2d at 1195. Local 33 and Shiflett had a dispute with the

Accepting as true the allegations in the complaint, Sirpal has not stated a claim for IIED. He has alleged that Wang engaged in speech designed to harass Sirpal by accusing him of dishonest, abusive, and criminal conduct. *See* ECF No. 6 ¶¶44, 47. As a matter of law, such conduct, though reprehensible, does not state an IIED claim. *See Batson*, 325 Md. at 734, 602 A.2d at 1217. Accordingly, the IIED claim must be dismissed.

C. Sirpal's Motion to Quash and For Protective Order

Sirpal has moved to quash the federal subpoena because, he argues, it was served in violation of Fed. R. Civ. P. 26(d) and does not seek relevant or specific evidence. ECF No. 27 at 1. Wang counters that the subpoena is necessary to preserve relevant, specific evidence, and a protective order is unnecessary. ECF No. 24 at 3-10.[12]

---

national union. Both sides distributed pamphlets to members of Local 33 about the dispute. *Id.* at 694, 602 A.2d at 1196. The national union distributed one pamphlet accusing "Shiflett and his supporters [of] trying 'to steer your attention away from their crimes of conspiracy, perjury, falsification of records, illegal contract ratification and violation of both the National [Union's] Constitution and By-Laws of your Union.'" *Id.*

The Court of Appeals of Maryland upheld the jury's finding that the pamphlet was defamatory, but concluded that, as a matter of law it could not support an IIED verdict because it was not sufficiently extreme and outrageous. *Id.* at 734, 602 A.2d at 1217. To conclude otherwise, it held, would "dramatically expand the boundaries of" IIED. *Id.*

[12] "Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the

11

1.   Rule 26(d)

Under Rule 26(d), a "party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . by stipulation, or by court order." A district court has "wide latitude in controlling discovery." *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 195 (4th Cir. 2003).

Had Wang moved for permission to serve the subpoena, the Court might have applied a "standard based upon reasonableness or good cause, taking into account the totality of the circumstances." *L'Occitane, Inc. v. Trans Source Logistics, Inc.*, No. 09-2499-WMN, 2009 WL 3746690, *2 (D. Md. Nov. 2, 2009) (internal quotation marks omitted). Wang asks the Court to apply that standard to decide whether to quash the subpoena, after it has issued. ECF No. 24 at 3.

Wang should have moved for permission to conduct limited discovery before the Rule 26 conference. *See* Fed. R. Civ. P. 26(d). However, accepting Wang's statement that Verizon would not have preserved call or text records without a subpoena, the

---

subpoena." *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005). Wang has not argued that Sirpal lacks standing. Further, the Court could construe the motion as one for a protective order, and consider the Rule 26 factors, including relevance, in deciding the motion. *See Wash. v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005) (construing defendant's motion to quash subpoena served on third parties as a motion for protective order and applying analysis as it would for a motion to quash).

Court concludes that quashing the subpoena is not an appropriate means of correcting the procedural defect. The subpoena appears to have been necessary to preserve the phone records, and Sirpal will not suffer unfair prejudice because of the procedural error. Wang has not obtained an advantage by serving the subpoena, because Verizon has agreed to preserve, but not disclose, the requested information. ECF No. 24 at 4.

    2.   Relevance and Breadth of Information Sought

Next, Sirpal contends that the federal subpoena is overbroad and seeks irrelevant information. ECF No. 22 at 3.

Under Rule 26(b)(1), parties "may obtain discovery regarding any . . . matter that is relevant to any party's claim or defense." "Relevance" is construed broadly in the discovery context and is not limited to evidence that would be admissible in court. See Fed. R. Civ. P. 26(b)(1); *Posey v. Calvert Cnty. Bd. of Educ.*, No. 02-2130-WMN, 2003 WL 21516194, *1 (D. Md. Mar. 27, 2003). The information need only "appear reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Subpoenas must seek only information that is not "otherwise procurable by exercise of due diligence" and not overbroad. *United States v. McDonald*, 444 F. App'x 710, 711 (4th Cir. 2011) (citing *United States v. Nixon*, 418 U.S. 683, 699-700 (1974)). A subpoena is overbroad if it "does not limit the documents

requested to subject matter relevant to the claims or defenses." *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008). For example, a request for "all copies of e-mails sent or received by anyone with no limitation as to time or scope" is usually overbroad. *Id.* (internal quotation marks and citation omitted).

Sirpal argues that his claims concern the content of text messages and conversations with Wang between October 28, 2011 and November 22, 2011. ECF No. 22 at 5. Therefore, he contends, the subpoena seeks irrelevant information because it seeks information about his communication with all other people, and about communication before and after the relevant period. ECF No. 22-2 at 5.

Wang contends that Sirpal's communications before and after the acts alleged in the complaint will reveal whether the nature or frequency of communications between Wang and Sirpal changed before October 28, 2011 or after November 22, 2011. ECF No. 24 at 5-6. She argues that examining all of Sirpal's calls and texts "will demonstrate whether Ms. Wang's conduct with Plaintiff was 'harassing' in comparison to other calls and texts that Plaintiff received." *Id.* at 6.

As the IIED claim will be dismissed, only Wang's communications with the Johns Hopkins University administration are at issue: the defamation claims and any new interference

with business relations claim depend on Wang's statements to the administration, not her statements to Sirpal.[13] Thus, the content of Wang's alleged statements to Sirpal are not relevant. Because the "harassing" nature of the alleged communications are not at issue in the defamation and tortious interference claims, the relative frequency of calls and texts from Sirpal is irrelevant, and the subpoena is overbroad.

The content and timing of Wang's communications with Sirpal could be relevant to the falsity element of the defamation claims[14] or the intent element of a tortious interference claim, but Wang has not demonstrated "substantial need" for Sirpal's telephone records.[15] She may be able to show the pattern and content of her communications with Sirpal by subpoenaing her own cellular telephone carrier's records.

The subpoena will be quashed.

---

[13] See Indep. Newspapers, Inc. v. Brodie, 407 Md. 415, 421, 966 A.2d 432, 448 (2009) (defamation requires proof of defamatory statement to third person); K&K, 316 Md. at 155, 557 A.2d at 973 (tortious interference claim requires proof of acts calculated to disrupt business relationship with a third party).

[14] See Indep. Newspapers, 407 Md. at 421, 966 A.2d at 448 (to state a claim for defamation, the plaintiff must show that the defamatory statement was false).

[15] See McDonald, 444 F. App'x at 711.

III. Conclusion

For the reasons stated above, Wang's motion to dismiss counts 3 and 4 will be granted. Sirpal's motion to quash the subpoena or for a protected order will be granted.

_7/11/12_
Date

William D. Quarles, Jr.
United States District Judge