IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                    *

SANJEEV SIRPAL,                     *

        Plaintiff,                  *

            v.                      *    CIVIL NO.: WDQ-12-0365

FENGRONG WANG,                      *

        Defendant.                  *

                                    *


*     *     *     *     *     *     *     *     *     *     *     *     *
```

MEMORANDUM OPINION

Sanjeev Sirpal sued fellow graduate student Fengrong Wang in the Circuit Court for Baltimore City for defamation and other common law claims. ECF No. 2. Wang removed the suit to this Court. ECF No. 1. Both parties have moved for summary judgment. ECF Nos. 43, 44. Sirpal has also moved for discovery sanctions. ECF No. 43 at 1. No hearing is necessary. Local Rule 105.6 (D. Md. 2011). For the following reasons, Wang's motion for summary judgment will be GRANTED, and Sirpal's motions for summary judgment and discovery sanctions will be DENIED.

I. Background[1]

Sirpal and Wang were doctoral students in the Johns Hopkins School of Public Health ("University" or "Hopkins") and studied in separate labs in the Department of Biochemistry and Molecular Biology. *See* ECF Nos. 43-1, 43-2, 44-1 at 7. Sirpal and Wang dispute the nature of their relationship. Sirpal alleges that Wang was "obsessed" with him and imagined they were in a romantic relationship. ECF No. 5. Wang alleges that she and Sirpal briefly considered each other boyfriend and girlfriend, but she broke off the relationship because she felt Sirpal mostly communicated with her to receive help with homework. *See* ECF No. 44-2 at 20.

Whatever the nature of their relationship, sometime in November 2011, Wang discovered from a Google search that a plaintiff named "Sanjeev Sirpal" had sued the University of Miami ("Miami") following the plaintiff's dismissal from Miami's MD/PhD program. ECF No. 44-1 at 6-7. When she asked him about that suit, Sirpal told her that his cousin had sued Miami, not him, and Wang initially believed him. ECF No. 44-2 at 21-22.

---

[1] The facts are taken from the parties' motions for summary judgment, ECF Nos. 43, 44, and supporting exhibits, and the parties' replies to the motions, ECF Nos. 45, 56, and supporting exhibits. On cross-motions for summary judgment, "each motion [is] considered individually, and the facts relevant to each [are] viewed in the light most favorable to the non-movant." *Mellen v. Bunting,* 327 F.3d 355, 363 (4th Cir. 2003).

2

On November 20, 2011, following that conversation with Sirpal, Wang received an anonymous email which said that she was not spending sufficient time in her lab and threatened to report her to the head of the lab, Dr. Pierre Coulombe,[2] if she did not change her behavior. ECF Nos. 44-1, 44-2 at 19. At first, Wang had no idea who had sent the email and forwarded a copy to Sirpal for his guidance. ECF No. 44-11. Wang suspected that Sirpal had sent it because she had found out about the Miami lawsuit. ECF No. 44-2 at 19, 21. Sirpal no longer denies that he was dismissed from Miami and subsequently sued the school over his dismissal. *See, e.g.*, ECF No. 43 at 10. Neither side has offered proof of the email's authorship. *See* ECF Nos. 44-4 at 45, 45 at 19.

Wang forwarded the anonymous email to Coulombe. *See* ECF No. 44-12 at 2. On November 21, 2011, she met with Coulombe, Michael Ward, Associate Dean for Student Affairs, and Sharon Warner, Academic Program Administrator (collectively "Hopkins officials"). *See* ECF No. 44-1 at 5. Wang told them about the Miami lawsuit and her belief that Sirpal had sent the anonymous email. *See id.* She also said she and Sirpal had been in a relationship that she had broken off, and she described occasions in which she had felt threatened by Sirpal following

---

[2] Coloumbe is Chair of the Department of Biochemistry and Molecular Biology at Hopkins. ECF No. 43-18 at 2.

their break-up.[3] *See id.* Wang also told them that she had recently sent a friend an email with her parents' contact information, because of her concerns about Sirpal.[4] *See* ECF No. 44-1 at 5. It appears that she told the Hopkins officials that the email was prompted by her concerns that she could be hurt or killed. *See id.*; ECF No. 43-15.

On November 21, 2011, following their meeting with Wang, Ward and Coulombe met with Sirpal to discuss Wang's accusations. ECF No. 44-3 at 78. Coulombe and Ward informed Sirpal of Wang's concerns about his behavior. *See* ECF No. 44-3 at 16. Sirpal denied any wrongdoing and that they had been in a romantic relationship. *See id.*; ECF No. 44-1 at 9. After the meeting, Ward issued Sirpal and Wang identical letters instructing them to stop communicating with each other, except for certain school purposes. *See* ECF Nos. 44-3 at 19, 44-13, 44-14. Coulombe and Ward considered the conflict between Sirpal and Wang resolved by the issuance of the letters. *See* ECF Nos. 44-3 at 21-22, 44-4 at 10-11.

---

[3] These included: (1) an incident when Sirpal told Wang that she "would regret this" when she told him she no longer wanted to be his girlfriend or his friend and he had made "loud . . . scary noises;" and (2) an incident when Sirpal slammed a printer drawer while standing by Wang. *See* ECF No. 44-2 at 7, 21.

[4] Wang's email contains a picture of Sirpal and his contact information and informs her friend that "[h]e has been harassing me with calls." ECF No. 43-6.

4

After the meetings with Sirpal and Wang, Coulombe did a Google search on Sirpal and confirmed what Wang had told him about the Miami litigation. *See* ECF No. 44-4 at 17. He immediately discussed with other University administrators whether Sirpal was the plaintiff in the Miami litigation; Sirpal had indicated on his application form that he had never been dismissed from another academic program and had said he had been working for the Department of the Defense when the plaintiff was attending Miami. *See* ECF Nos. 44-8 at 3-4, 44-15. In an email to Ward and Warner, Coulombe stated that making misrepresentations of this kind would be cause for Sirpal's immediate dismissal from Hopkins. ECF No. 44-15.

On November 30, 2011, Hopkins officials met with Sirpal, and confronted him about the Miami litigation. *See* ECF No. 44-3 at 24-26. They told Sirpal that he could voluntarily withdraw from Hopkins, or they would seek his dismissal. *See id.* at 36. They gave Sirpal time to decide, but told him that in the interim he must remain off-campus and not contact members of his program. *See id.* After the meeting, Ward decided to issue a BOLO[5] to security to alert them that Sirpal was banned from campus. *See id.* at 37-38. The parties dispute the reasons for

---

[5] A BOLO notifies campus security that they should "be-on-the-lookout" for the identified individual. *See* ECF No. 44-3 at 38-39.

the issuance of the BOLO.[6]  On December 1, 2011, Sirpal emailed
Ward that he was voluntarily withdrawing from Hopkins.  ECF No.
44-19.

On December 5, 2011, Sirpal sued Wang in the Circuit Court
for Baltimore City.  ECF No. 2.  On February 6, 2012, Wang
removed to this Court under diversity jurisdiction.[7]  ECF No. 1.
On August 1, 2012, Sirpal filed an amended complaint, seeking
$100,000 in compensatory damages and $300,000 in punitive
damages.  ECF No. 30 at 14.  The amended complaint alleged:
defamation *per se* (count 1), defamation (count 2), and tortious
interference with contractual relations (count 3).  *Id.* at 11-
13, ¶¶ 51–80.

On January 29, 2013, after discovery, Sirpal moved for
summary judgment, or in the alternative, for partial summary
judgment and for discovery sanctions.  ECF No. 43.  Wang cross-
moved for summary judgment and opposed Sirpal's motion for
sanctions.  ECF No. 44.  Both parties filed replies.  ECF Nos.
45, 46.

---

[6] Sirpal contends that the BOLO was largely because of Wang's
accusations.  *See* ECF No. 43 at 28.  Wang contends that the BOLO
was issued, *inter alia*, because Sirpal immediately violated
Ward's instructions to stay off-campus following the November 30
meeting.  *See* ECF No. 44-1 at 11.

[7] Sirpal's home is in Florida.  ECF No. 2 at 1.  Wang is a
Chinese citizen studying in Maryland under a student visa.  ECF
No. 1-1.

## II. Analysis

### A. Standard of Review

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[8] In considering the motion, the judge's function is "not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to ... the nonmovant and draw all reasonable inferences in his favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club,*

---

[8] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' ... to express the direction to grant summary judgment." Fed.R.Civ.P. 56 advisory committee's note.

*Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

When cross-motions for summary judgment are filed, "each motion must be considered individually, and the facts relevant to each must be reviewed in the light most favorable to the nonmovant." *Mellen*, 327 F.3d at 363 (*citing Rossignol v. Voohaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

B. Sirpal's Motion for Summary Judgment

1. Tortious Interference

In Maryland, tortious interference encompasses two causes of action: "inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract." *K & K Mgmt., Inc. v. Lee,* 316 Md. 137, 154-55, 557 A.2d 965, 973 (1989) (internal quotation marks and citations omitted).

Sirpal asserts that Wang's complaints induced the University to breach its contract with him--to dismiss him as a student from the school. ECF No. 43 at 27. To support his claim, he relies on evidence which allegedly shows that, "immediately following Wang's accusations, Mr. Sirpal was considered a threat by members of the University," and also notes that "ten days after Wang's accusations" he was told he would be dismissed from the program if he did not voluntarily withdraw, and his access to campus was restricted. *See id.* at

8

27-28. In response, Wang offers evidence that her statements were not a reason for the University's decision to seek Sirpal's withdrawal, and instead the decision was based on Sirpal's "failure to disclose the issues with the University of Miami on his application [to Hopkins]." *See* ECF No. 44-1 at 15.

To prevail on a claim for inducing breach of contract, the plaintiff must show:

> (1) a contract or legally protected interest existed between the plaintiff and a third party;[9] (2) the defendant knew of the contract; (3) the defendant intentionally induced the third party to breach or otherwise rendered performance of the contract impossible; (4) the interference was wrongful or without justification; (5) the contract was subsequently breached or terminated by the third party; and (6) the plaintiff suffered damages as a result."

*Prudential Real Estate Affs., Inc. v. Long & Foster Real Estate, Inc.*, 208 F.3d 210 (table), 2000 WL 248180, \*3 (4th Cir. 2000) (*citing Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 503, 665 A.2d 297, 313 (1995)).

---

[9] Sirpal was a student at Hopkins when the events of this suit took place. ECF No. 44-1 at 2-7. Thus, Sirpal has established that he had a contract with the school. *See Harwood v. Johns Hopkins Univ.*, 747 A.2d 205, 209 (Md. Ct. Spec. App. 2000) ("When a student is duly admitted by a private university there is an implied contract between the student and the university that, if the student complies with the terms prescribed by the university, the student will obtain a degree." (internal quotation marks and citation omitted)).

To carry his burden, the plaintiff must show that the defendant caused either "the destruction of the business relationship which was the target of the interference,"[10] or a breach of the contract by the third party.[11] Because virtually all events have multiple causes, the plaintiff need not "negative entirely the possibility that the defendant's conduct was not a cause"--he need only show "it is more probable that the event was caused by the defendant's tortious act than that it was not." *See Med. Mut. Liab. Soc. of Maryland v. B. Dixon Evander & Associates, Inc.*, 339 Md. 41, 55, 660 A.2d 433, 440 (1995). However, if a harmful event would have occurred without the tortious act, then the act is not considered a legal cause of the harm. *See id.* In other words, "a defendant may not be held liable in damages for a plaintiff's loss if he can show 'not only that the same loss might have happened, but that it must have happened if the act complained of had not been done.'" *Id.* (*citing Balt. & Potomac R.R. Co. v. Reaney*, 42 Md. 117, 137 (1874)). Finally, causation must be proved by evidence that is more than "wholly speculative." *Lyon v. Campbell*, 120 Md. App. 412, 437, 707 A.2d 850, 863 (1998).

---

[10] *Kaser v. Fin. Protection Mktg.*, 376 Md. 621, 629, 831 A.2d 49, 54 (2003).

[11] *Prudential Real Estate,* 2000 WL 248180, *3.

10

Wang's evidence demonstrates that: (1) Sirpal's misrepresentations on his Hopkins application were the primary reason Hopkins sought his withdrawal;[12] and (2) Hopkins's policy authorized dismissal of a student who misrepresented his academic background on his application.[13] Although Sirpal contends Wang's defamatory statements led to his dismissal, *see* ECF No. 43 at 27-28, he has not offered evidence to support this speculation. His evidence establishes, at most, that Wang's statements contributed to Hopkins officials considering him a "threat," and restricting his access to the campus. *See* ECF No. 44-3 at 42. However, these restrictions came only after Hopkins officials had decided that Sirpal could no longer attend the school.[14] *See* ECF Nos. 44-3 at 41-42, 44-4 at 28. Moreover,

---

[12] When asked if the decision to seek Sirpal's withdrawal or dismissal from Hopkins was related to Wang's accusations, Ward replied: "It had nothing to do with that. As a matter of fact, that part of it had nothing to do with her at all." ECF No. 44-3 at 43. When asked if "the conflict between Ms. Wang and M[r.] Sirpal in any way affect[ed] a decision of whether or not Mr. Sirpal would continue at Johns Hopkins," Coloumbe replied "No." ECF No. 44-4 at 34. Warner also denied that Wang's "complaints or statements . . . play[ed] any role in his ultimate departure" from Hopkins. *See* ECF No. 44-5 at 11.

[13] In an email to Ward, Coulombe stated that, if Sirpal was involved in the Miami litigation, "then this is ground for dismissal as none of this was disclosed to us at the time of application and vetting." ECF No. 44-15; *see also* ECF No. 44-4 at 21.

[14] After his meeting with Sirpal to seek Sirpal's withdrawal, Coloumbe became concerned that Sirpal might be a threat to him, and emailed Ward to that effect. ECF No. 44-17 at 2. Coloumbe

Wang's evidence shows that her accusations were not the only or primary reason for the restriction of Sirpal's access,[15] and that the restrictions on dismissed students were common.[16]

Sirpal has also not offered any evidence that, but for Wang's allegedly defamatory statements, Hopkins would not have sought his withdrawal or restricted his access to campus.[17]

---

does not cite Wang's accusations as a reason for his concerns, and his email notes that Coloumbe feared a confrontation with Sirpal whom he had "just dismissed."  ECF No. 44-17 at 2; *see also* ECF No. 44-4 at 22-24.

[15] Ward's deposition states that, in addition to Wang's accusations, Sirpal's immediate violation of Ward's directive not to enter campus without his permission, and Sirpal's failure to take responsibility for the misrepresentations on his application, contributed to Ward's assessment that Sirpal was a threat after he was asked to withdraw from Hopkins.  *See* ECF No. 44-3 at 41-42.  Coulombe's deposition states that he considered Sirpal a threat because Sirpal displayed agitation and aggression at the meeting at which Sirpal was informed that he could no longer stay at Hopkins.  *See* ECF No. 44-4 at 31-32.

[16] "BOLO was on there to protect our community at large because . . . it was likely that dismissal or withdrawal or involuntary removal was going to happen, so it's pretty consistent that we would have a BOLO and the desk would know that this person should not enter unless escorted where arrangements were made. . . . Your question was do we put a BOLO out if a student has two choices, involuntary leave.  Often, yes, for the most part."  ECF No. 44-3 at 39-40 (Ward Deposition); *see also* ECF No. 44-4 at 28 (Coulombe Deposition) ("Any time somebody is dismissed that I know of . . . . when the dismissal takes place, any movement within the premises is with the presence of a security officer.").

[17] Sirpal argues that his student status was still "unknown" when his access to campus was restricted, and thus the BOLO was not issued because of his "status as a non-student."  *See* ECF No. 45 at 31.  Even if this were the case, Sirpal has not offered evidence that, but for Wang's accusations, Ward would not have

Sirpal has not asserted that Wang acted tortiously in informing Hopkins officials of the Miami lawsuit, and Wang has offered evidence that Hopkins officials considered the misrepresentations on Sirpal's application a very serious breach of University policy. *See* ECF No. 44-15. Accordingly, a reasonable jury could not conclude that any defamatory statements made by Wang were a cause in fact of the termination of Sirpal's contract with Hopkins. *See Anderson,* 477 U.S. at 248. Sirpal is not entitled to summary judgment on this claim. *See id.*

### 2. Defamation

Sirpal alleges that several of Wang's statements to Hopkins officials qualify as either defamation *per se* or defamation *per quod* under Maryland law. *See* ECF No. 43 at 16-17, 22. Wang argues that the statements she made were true and not defamatory, and that Sirpal did not suffer damages from them.[18] ECF No. 44-1 at 22-25.

---

issued the BOLO. In response to Wang's counsel's question-- "[Would] Ms. Wang's and Mr. Sirpal's conflict standing alone without the University of Miami litigation . . . have resulted in the BOLO?"--Ward responded categorically: "No." ECF No. 44-3 at 45.

[18] Wang also contends that her statements are entitled to a qualified privilege. ECF No. 44-1 at 26-27. Because the Court will determine that Sirpal has not shown a triable issue of fact about whether her allegedly defamatory statements were false or caused Sirpal damages, the Court need not decide this issue.

To establish a Maryland defamation claim, a plaintiff must prove: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Piscatelli v. Van Smith,* 424 Md. 294, 306, 35 A.3d 1140, 1147 (2012) (internal quotation marks and citations omitted). A statement is defamatory if it "tends to expose a person to public scorn, hatred, contempt, or ridicule." *Id.* (internal quotation marks and citations omitted). A false statement "is not substantially correct." *Id.*

Maryland law distinguishes between statements that are defamatory *per se* and those that are defamatory *per quod. See Indep. Newspapers, Inc. v. Brodie*, 407 Md. 415, 441, 966 A.2d 432, 448 (2009). Statements that impute: (1) the commission of a crime, (2) unchastity or immorality, (3) injury to profession, trade, or business, or (4) injury to employment, are defamatory *per se.* 14 Md. Law Encyc. Libel & Slander §§ 6-13. If the statement is not within one of those four categories, the plaintiff must show that the statement is defamatory through proof of extrinsic facts. *See Brodie*, 407 Md. at 441, 966 A.2d at 448. The extrinsic facts must show that "the words or actions were defamatory, but [also] that such words or conduct caused actual damages." *See id.* at 442 (*quoting M & S Furniture*

14

*Sales Co., Inc. v. Edward J. De Bartolo Corp.*, 249 Md. 540, 544, 241 A.2d 126, 128 (1968)).

Sirpal asserts that Wang told Hopkins officials that he threatened her, that he would kill her, and that he stalked her.[19]  ECF No. 43 at 17-18.  Wang contends that she never accused Sirpal of threatening to kill her or otherwise; instead she contends that she told Hopkins officials that she "felt" threatened and scared by Sirpal's behavior.  *See* ECF No. 44-1 at 21-24.  Sirpal also contends that Wang falsely told Hopkins officials that they were in an "amorous" relationship and that Sirpal "was using" Wang for homework help.  *See* ECF No. 43 at 17-18.

The uncontradicted evidence establishes that Wang told Hopkins officials that she *felt* physically threatened and intimidated by Sirpal's behavior,[20] that Sirpal's behavior scared her,[21] and that she feared for her life.[22]  Sirpal has not shown a

---

[19] In response to the question--"Did [Wang] say that [Sirpal] was stalking her?"--Ward replied:  "I think he walked behind her in a manner that I would describe as perhaps stalking, but I don't know that she used that language.  I walked away with an understanding that his behavior was stalking-like."  ECF No. 44-3 at 47-48.  This is the only evidence that Sirpal cites about Wang's use of the word "stalking."  *See* ECF No. 43 at 18.  At best, it establishes that Ward interpreted Wang's description of Sirpal's conduct as stalking, not that Wang told Hopkins officials that Sirpal was stalking her.

[20] *See, e.g.*, ECF Nos. 43-16, 44-4 at 19, 44-5 at 4.

[21] *See, e.g.*, ECF Nos. 43-7 at 24, 44-5 at 16.

triable issue of fact that these statements were defamation *per se* or *per quod*, because he has not demonstrated a genuine dispute that these statements were false. *See McReady v. O'Malley*, 804 F. Supp. 2d 427, 442 (D. Md. 2011) *aff'd,* 468 F. App'x 391 (4th Cir. 2012) *cert. denied,* 133 S. Ct. 577, 184 L. Ed. 2d 375 (U.S. 2012) (finding plaintiff failed to prove falsity of allegedly defamatory statements, because "[w]ith respect to [defendant's] statements that she felt harassed and threatened by [plaintiff's] conduct, there is simply no genuine dispute that [defendant] *in fact* felt that way." (emphasis in original)). Wang has offered uncontradicted evidence that she felt threatened and was frightened by Sirpal's behavior,[23]

---

[22] Sirpal asserts that Wang told Hopkins officials that Sirpal threatened to, or would, kill her. *See* ECF No. 43 at 17-18. His evidence does not support his assertion. Ward and Coloumbe remember that Wang expressed fear for her life, ECF Nos. 44-3 at 12, 43-18 at 3, and Wang may have used the word "killed" during their conversations with her. *See* ECF Nos. 43-15; No. 44-3 at 13. When asked, Warner and Coloumbe denied Wang told them Sirpal expressly threatened to kill her. *See* ECF Nos. 44-5 at 13, 44-4 at 5; *see also* ECF No. 44-2 at 18 (Wang deposition) (denying that she made "any report to anyone . . . that Mr. Sirpal threatened to kill" her). Ward initially stated that Wang told him something like "he may kill me now," ECF No. 44-3 at 13, but later corrected his testimony and said that he believed Warner, not Wang, said Sirpal might kill. ECF No. 44-3 at 48-49.

[23] *See, e.g.*, ECF No. 44-5 at 22-23 (Warner deposition) (Wang told her that she felt threatened and intimidated by Sirpal, but did not say Sirpal "was threatening her;" Warner thought Wang actually felt threatened). Ward and Warner agreed that Wang seemed genuinely fearful, *see* ECF Nos. 43-17 at 3, 44-3 at 7-9,

particularly her belief that Sirpal had sent the anonymous email. *See* ECF No. 44-2 at 8, 19.[24] Accordingly, Sirpal has failed to establish a genuine dispute that these statements falsely defamed him. *See* Fed. R. Civ. P. 56(a)

The evidence also establishes that Wang may have told Hopkins officials that she and Sirpal were in a romantic relationship, and he pressured her for homework help. *See* ECF Nos. 44-2 at 20, 43-15, 43-18 at 7. Sirpal claims these statements were defamatory. *See* ECF No. 43 at 17-18. To recover, Sirpal must prove he suffered actual damages from these statements. *See Brodie*, 407 Md. at 442, 966 A.2d at 448. Sirpal has not alleged, let alone proved, any damages resulting from these statements.[25] Thus, Wang is entitled to summary

---

44-5 at 8, and Wang's email to her friend also expresses her fear. *See* ECF No. 43-6.

[24] Sirpal tries to show Wang remained friends with him after several of the incidents that caused her to feel threatened and scared, such as the slamming of the printer drawer, to show that her fear of him was not genuine. *See, e.g.*, ECF No. 45-4 at 5-8. However, Wang did not contact Coloumbe with her concerns about Sirpal until after she received the anonymous email, *see* ECF No. 44-2 at 21, and her testimony suggests that the email reawakened previous fears about Sirpal's behavior, *see* ECF Nos. 44-2 at 32, 45-4 at 10. Sirpal has not offered evidence that this email did not genuinely frighten Wang or that she did not actually believe Sirpal had written it.

[25] Sirpal claims he suffered the following damages from Wang's allegedly defamatory statements: (1) he was classified as a threat by Hopkins officials; (2) a BOLO was issued preventing him from accessing campus; and (3) he was prohibited from communicating with Hopkins staff and students. *See* ECF No. 43

17

judgment on Sirpal's defamation claims arising from these statements.

    C. Wang's Motion for Summary Judgment

        1. Tortious Interference

A defendant is liable for tortious interference with contractual relations in Maryland if, *inter alia*, the defendant's act caused "the destruction of the business relationship which was the target of the interference." *See Kaser*, 376 Md. at 629, 831 A.2d at 54. In other words, the "improper or wrongful conduct must induce the . . . termination of the contract." *Macklin v. Robert Logan Associates*, 334 Md. 287, 301, 639 A.2d 112, 119 (1994). A defendant may not be held liable, however, if the plaintiff's loss would have occurred even if the defendant had not acted tortiously. *See Med. Mut.*, 339 Md. at 55, 660 A.2d at 440.

Sirpal alleges that Wang's defamatory statements caused Hopkins to terminate its contract with him. *See* ECF No. 43 at 24. He does not contend that Wang's disclosure of the Miami litigation to the Hopkins officials was a tortious act. *See id.* at 17-19. As discussed *supra* in Section II.B.1., Wang's uncontradicted evidence establishes that: (1) Sirpal's dismissal

_____

at 20. He does not allege, and the Court cannot perceive, any connection between these actions and Wang's statements, whether true or false, that she was dating Sirpal and helped him with his homework. *See id.*

18

from Hopkins resulted from his misrepresentations on his Hopkins application; (2) the restrictions on Sirpal's access to campus were primarily because of his imminent dismissal or withdrawal from Hopkins; and (3) Sirpal's misrepresentations alone were cause for immediate dismissal from Hopkins. Thus, Wang's evidence shows that Sirpal would have been dismissed from Hopkins, and his access to campus restricted, even if she had never made any of the statements that Sirpal alleges were defamatory.[26] *See Med. Mut.*, 339 Md. at 55, 660 A.2d at 440. Accordingly, there is no triable issue of fact that any allegedly defamatory statement legally caused Sirpal's dismissal from Hopkins; Wang is entitled to summary judgment on Sirpal's tortious interference claim. *See Anderson,* 477 U.S. at 249.

### 2. Defamation

A defendant is liable in Maryland for defamation, if the defendant makes a false, defamatory statement to another person with fault, and the plaintiff suffers damages as a result. *See Piscatelli,* 424 Md. at 306, 35 A.3d at 1147. If the defendant's statements are not defamatory *per se*, extrinsic facts must show

_____

[26] *See, e.g.*, ECF No. 44-15 (email from Coloumbe to Ward and Warner) ("As per our policy, a student is to be dismissed if she/he failed to report a serious ethical breach of the type involved here at the time of his/her application to our program. . . . "the ONLY question here, in my view, is whether the Sanjeev Sirpal enrolled in our PhD Program is the person who was a MD PhD student at the Univ. of Miami."); ECF No. 44-1 at 11.

19

that the defendant's words or actions were defamatory and caused actual damages. *See Brodie*, 407 Md. at 441, 966 A.2d at 448.

As discussed *supra* in Section I.B.2., there is no evidence Wang told Hopkins officials that Sirpal stalked her, threatened her, or tried to kill her; instead, the evidence is that Wang told Hopkins officials that she felt threatened and scared by Sirpal's behavior, even to the extent that she feared for her life. Wang's evidence that she felt this way includes her statements and the Hopkins officials' belief that her fear was genuine. *See* ECF No. 44-2 at 8, 19. Sirpal has not offered any evidence which creates a triable issue of fact about whether Wang actually felt scared or threatened.[27] In addition, Sirpal has not alleged that he suffered any damages from Wang's statements that she and Sirpal were in a romantic relationship or that Sirpal used Wang for homework help, even if those statements were false.[28] Accordingly, no reasonable jury could conclude that any of Wang's statements were defamatory; Wang is entitled to summary judgment on Sirpal's defamation claims. *See Anderson,* 477 U.S. at 248.

---

[27] *See supra* n.24; *cf. Anderson,* 477 U.S. at 249 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (internal citations omitted)).

[28] *See supra* n.25. These statements do not qualify as defamation *per se*, 14 Md. Law Encyc. Libel & Slander §§ 6-13, and thus Wang's liability depends on a showing of extrinsic facts which demonstrate that Sirpal suffered damages, s*ee Brodie*, 407 Md. at 441, 966 A.2d at 448.

D. Motion for Discovery Sanctions

Sirpal moves for discovery sanctions against Wang under Rule 26(g), because he asserts that her discovery disclosures were not truthful to the best of her knowledge when they were made, as required by the rule. *See* ECF No. 43 at 28. He claims she abused the discovery process by: (1) fabricating Facebook communications between herself and Sirpal; (2) failing to produce certain emails between herself and Coloumbe; and (3) lying in her deposition testimony about her physical contact with Sirpal. *See id.* at 29. Wang denies she committed any discovery abuses. *See* ECF No. 44-1 at 28-29.

Federal Rule of Civil Procedure 26(g)(1)(A) requires, in pertinent part that:

> "[e]very disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record . . . . By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry . . . with respect to a disclosure, it is complete and correct as of the time it is made[.]"

The Rule requires the court to impose sanctions, "[i]f a certification violates this rule without substantial justification." Fed. R. Civ. P. 26(3); *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358 (D. Md. 2008).

Sirpal essentially alleges that Wang created Facebook accounts that she falsely attributes to him, and then fabricated

communications between her account and the fake accounts. *See*
ECF Nos. 43 at 29, 45 at 31-33. The only evidence Sirpal offers
that Wang created false accounts was his denial in his
deposition that he was ever Facebook friends with Wang. *See* ECF
No. 44-6 at 3. Wang has produced numerous emails that
substantiate the existence of the accounts,[29] *see* ECF Nos. 44-9,
44-10 at 1-5, and she denied repeatedly that she created them,
ECF No. 44-2 at 11-17. If Wang did incorrectly attribute these
accounts to Sirpal, she has provided substantial justification
that, to the best of her knowledge, she believed the accounts
belonged to Sirpal. *See, e.g.*, ECF No. 44-2 at 16.

　　Sirpal also contends Wang did not produce emails between
her and Coloumbe. ECF No. 43 at 29. Wang asserts that she did
not believe she had to produce them, because Coloumbe told her
he also had to produce them. *See* ECF No. 43-7 at 28-30. Sirpal
does not disprove Wang's assertion that she genuinely
misunderstood her discovery obligations,[30] and the email at issue

---

[29] Even considered in the light most favorable to Sirpal, his
evidence does not prove the unlikely scenario that, at least two
weeks *before* her conflict with Sirpal arose, Wang created a fake
Facebook account for Sirpal and began a fake conversation with
the account which lasted over a month. *Compare* ECF Nos. 44-9,
44-10 at 2-5 (Facebook correspondence begins on October 20th)
*with* ECF No. 43-7 at 18-20 (Wang testifies she broke up with
Sirpal on November 4th).

[30] As Wang is not a native English speaker, *see* ECF No. 44-2 at
28, her claim of misunderstanding is credible.

22

was provided to Sirpal.[31]  *Compare* ECF No. 43-7 at 29 *with* ECF No. 44-27.  Wang has shown she reasonably believed her disclosures were complete and correct.  *See* Fed. R. Civ. P. 26(g)(1)(A).

Finally, Sirpal contends that Wang lied in her interrogatories about the nature of their physical contact.  ECF No. 43 at 29.  The Court finds that Sirpal, by omitting certain words, has incorrectly characterized Wang's interrogatory response;[32] Wang was not otherwise inconsistent in her responses.[33]  Accordingly, Sirpal's motion for discovery sanctions will be denied.

---

[31] The email at issue says, in full: "Dr. Coulombe, Sanjeev filed a case to court to sue me. Do you have time to talk about it? Best, Fengrong."  ECF No. 44-27.

[32] Sirpal states that Wang's interrogatory response said Sirpal kissed her at her apartment.  *See* ECF No. 43 at 29.  Wang's response actually says that Sirpal told Wang "he would like to kiss her."  ECF No. 43-13 at 7.

[33] *Compare* ECF No. 43-7 (Wang responds "No" to a question that included "Lie down on your bed?" but is otherwise cut-off) *with* ECF No. 43-13 ("Plaintiff told Defendant that he loved her, that he would come to her apartment to 'lie next to her . . . .'").

III. Conclusion

For the reasons stated above, the defendant's motion for summary judgment will be GRANTED, and the plaintiff's motions for summary judgment and discovery sanctions will be DENIED.

___9/13/13___
Date

William D. Quarles, Jr.
United States District Judge